UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| MICHELLE M.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:17-CV-184-BL |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), the plaintiff seeks judicial review of the decision of the Commissioner of Social Security, who denied her application for disability insurance benefits under Title II of the Social Security Act. The Senior United States District Judge reassigned the case to this Court pursuant to 28 U.S.C. § 636(c). The parties have not consented to proceed before a United States Magistrate Judge. After considering the pleadings, briefs, and administrative record, this Court recommends the decision of the Commissioner be affirmed and this case dismissed.

## I. STATEMENT OF THE CASE

Plaintiff filed an application for DIB and SSI on January 22, 2015, alleging impairments that were disabling as of October 1, 2012. That application was denied initially and after reconsideration. The plaintiff requested a hearing, which was held before an Administrative Law

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies the Plaintiff only by first name and last initial.

Judge on September 29, 2016. The ALJ issued a decision on December 16, 2016 finding her not disabled.

Specifically, the ALJ found during step one that the plaintiff had not engaged in substantial gainful activity after the alleged onset date. (Doc. 12-1, 18). At step two, the ALJ found that she had the severe impairments of obesity, COPD, asthma, hypertension, palpitations, peripheral edema, degenerative disc disease, degenerative joint disease of the knee, an occlusion in the left eye, ocular hypertension, hypertensive retinopathy, and anxiety. (Doc. 12-1, 18). In the third step, the ALJ found those severe impairments did not meet and were not the equivalent of any listed impairments. (Doc. 12-1, 19). The step three analysis continued with the ALJ determining the claimant retained the residual functional capacity to perform sedentary work with limitations for climbing, crouching, crawling, balancing, concentrated heat or cold and humidity, concentrated exposure to chemicals, heights or hazardous machinery, and only occasional public interaction. (Doc. 12-1, 21). Those restrictions led the ALJ to determine at the fourth step that the plaintiff could return to a previous job, referring to the Dictionary of Occupational Titles for the impact of the severe impairments. (Doc. 12-1, 26). The ALJ alternatively found that the plaintiff could also perform other jobs existing in the national economy. (Doc. 12-1, 26). The ALJ therefore determined she was not under a disability between the alleged onset date and the date the decision was issued. (Doc. 12-1, 27).

The plaintiff then applied to the Appeals Council, which denied review on October 19, 2017. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[t]he Commissioner's final decision includes the Appeals Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

According to the pleadings, testimony at the administrative hearing, and administrative record, the plaintiff was 45 and living with her spouse and children at the time of the administrative hearing. She had employment history in data entry and various food service roles. She believes her physical and mental impairments render her disabled under the Act.

## III. STANDARD OF REVIEW

A person is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423 (d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b).

To evaluate a disability claim, the Commissioner follows a "five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [they are] disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*,

415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton*, 209 F.3d at 452. The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452.

## IV. DISCUSSION

The plaintiff alleges the ALJ failed to properly consider a medical opinion in compliance with regulations and precedent, and also failed to base the RFC determination on substantial evidence.

### A. Medical Opinion Evidence and 20 C.F.R. § 404.1527

The plaintiff alleges the ALJ failed to properly credit the opinion of Dr. Cynthia Perry, her treating physician. (Doc. 16, 8). She also contends that the ALJ did not comply with regulations

in determining that Dr. Perry's assessed limitations were not consistent with the record as a whole. (Doc. 16, 10). While the Commissioner is required to "give good reasons in [the] notice of determination or decision for the weight [she] give[s] [a] treating source's medical opinion[,]" this is not tantamount to a requirement to either adopt every medical source or write a lengthy explanation containing "good" reasons to the satisfaction of a claimant. *See, e.g. Greenwood v. Colvin*, 2016 U.S. Dist. LEXIS 80075 at *11 fn.1 (N.D. Tex. June 3, 2016) (R&R adopted June 20, 2016). Instead, subsection (c) of § 404.1527 sets out six factors for assessing all medical opinions: examining relationship, treatment relationship, supportability, consistency, specialization, and other factors such as the source's familiarity with disability proceedings.

Here, the ALJ noted that Dr. Perry was the treating physician, summarized the plaintiff's entire medical history, including visits to Dr. Perry, explained why the limitations assessed by Dr. Perry were unsupported by the record and inconsistent with the claimant's treatment, and noted that she never saw a mental health specialist for her alleged mental limitations. (Doc. 12-1, 25; 22-25; 24-25; 24). So, contrary to the plaintiff's allegations, the ALJ's decision to discount the opinion of Dr. Perry was not made without explanation and proper analysis. Although the ALJ might have inserted bold headers and organized the decision to emphasize the consideration of the factors, there is no question here that the ALJ did explicitly consider those factors in the text of the decision.

Although plaintiff preemptively claims a violation of the *Chenery* rule, the consideration of the § 404.1527(c) factors is unambiguously present in the text of the ALJ decision. (Doc. 16, 10 citing *SEC v. Chenery Corp.*, 332 U.S. 194 (1947)). This Court is not offering an alternative justification for the ALJ's decision, but rather reading the decision itself. Likewise, a decision upsetting the administrative determination is not required by *Newton*, as the plaintiff argues. (Doc.

16, 11 citing 209 F.3d 448 (5th Cir. 2000)). *Newton* requires an ALJ to consider the six factors before rejecting the opinion of a treating physician, absent a contradictory opinion by another treating or examining physician, but that consideration here was readily apparent in the text of the decision itself. Finally, it is not fair to say the ALJ rejected Dr. Perry's opinion, or that she did so without explanation, so *Kneeland* provides no basis to overturn the ALJ's decision. (Doc. 16, 10 citing *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017)). The ALJ considered Dr. Perry's opinion and gave it less weight than other medical opinions, but considered the opinion on its merits according to the regulations. The plaintiff has failed to show that there was any legal error in the ALJ's treatment of Dr. Perry's opinion.

### B. Substantial Evidence and the RFC

The plaintiff also contends the ALJ's RFC determination is unsupported by substantial evidence because she believes some impairments the ALJ classified as severe are not represented in the RFC assessed. (Doc. 16, 12). Specifically, the plaintiff believes that the impairments of peripheral edema and anxiety are incompatible with the RFC assessed by the ALJ. (Doc. 16, 14). The plaintiff believes that the edema is not accounted for in the RFC without a limitation permitting her to raise her legs to prevent the swelling. (Doc. 16, 14). However, plaintiff does not show that a need to elevate her legs is the only possible limitation which would be imposed by the edema, only that it was a possible limitation posed to the vocational examiner in a hypothetical question. (Doc. 16, 14 citing Doc. 12-1, 59).

The plaintiff might show that there is not even an iota of evidence supporting any of the assessed limitations being related to the peripheral edema, but the presumption is that the ALJ spoke honestly when she determined that she "considered all symptoms and the extent to which these symptoms" impact the RFC. (Doc. 12-1, 21). Showing that an additional limitation was

considered and not assessed, standing alone, is not sufficient to show that the condition is unaccounted for in the RFC.

The plaintiff's claim that her anxiety was not properly accommodated by the RFC focuses again on the alleged mistreatment of Dr. Perry's opinion. (Doc. 16, 15). The RFC explicitly states that "due to anxiety, the claimant is limited to jobs with no more than occasional public interaction." (Doc. 12-1, 21). So, the ALJ assessed the degree to which anxiety impacts the plaintiff's ability to work, and crafted the RFC accordingly. The ALJ did not "play doctor" or impermissibly insert her own opinions about medical issues into the determination, but rather considered all the evidence, determined that Dr. Perry's opinion was inconsistent with the treatment she provided, the opinion of reviewing physicians, and the claimant's own testimony about her daily life, and made a measured decision. Without showing that a reasonable person must find differently than the ALJ, the Court is not empowered to second-guess an ALJ's resolution of conflicting evidence.

## V. CONCLUSION

Considering the above, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** to the docket of Senior United States District Judge Sam R. Cummings.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated January 8, 2019.

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**